## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LARRY E. BROWN, II,

     Petitioner,     :  Case No. 3:20-cv-113

  - vs -           District Judge Michael J. Newman
               Magistrate Judge Michael R. Merz

NORMAN ROBINSON, Warden,
 London Correctional Institution,

              :

     Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Larry Brown under 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 3), the State Court Record (ECF No. 23), Respondent's Return of Writ (ECF No. 24), and Petitioner's Reply (ECF No. 38-42).

**Litigation History**

Brown was indicted by a Preble County Grand Jury on February 2, 2015, on one count of rape of a person less than thirteen years of age, one count of sexual battery, two counts of gross sexual imposition, and one count of importuning; all charges set out the date of birth of the victim. (Indictment, State Court Record, Ex. 1). Brown waived his right to trial by jury and was tried to the bench where he was found guilty on all counts.

1

Before sentencing, Brown filed a motion for a new trial. *Id.* at Ex. 9.  On June 8, 2016, the trial court denied that motion.  *Id.* at Ex. 13. A week later the trial judge merged all the charges into the rape count and sentenced Brown to a mandatory sentence of ten years to life imprisonment. *Id.* at Ex. 14.

Brown then appealed through counsel to the Ohio Court of Appeals for the Twelfth District which affirmed the judgment of conviction.  *State v. Brown*, 2017-Ohio-4231 (12th Dist. Jun. 12, 2017)(*"Brown I"*).  Brown did not take a direct appeal to the Supreme Court of Ohio.

On August 22, 2017, Brown, through counsel Christopher Pagan, filed a petition for post-conviction relief with the Preble County Court of Common Pleas. (Petition, State Court Record, ECF No. 23, Ex. 19).  The trial court denied the petition on *res judicata* grounds. *Id.* at Ex. 21.  Brown appealed and the Twelfth District again affirmed.  *State v. Brown,* 2018-Ohio-3338 (12th Dist. Aug. 20, 2018)(*Brown II*), appellate jurisdiction declined, 154 Ohio St. 3d 1464 (2018).

On July 19, 2019, Brown filed an application for reopening his appeal pursuant to App. R. 26(B)(State Court Record, ECF No. 23, Ex. 31).  The Twelfth District denied the Application as untimely.  *State v. Brown*, Case NO. CA2016-07-006 (12th Dist. Sept. 19, 2019)(unreported; copy at State Court Record, ECF No. 23, Ex. 32)("*Brown III*"), appellate jurisdiction declined, *Id.* at Ex. 36.

On March 25, 2019, Brown, *pro se*, filed a motion for leave to file a delayed motion for a new trial. (State Court Record, ECF No. 23, Ex. 37).  He filed a second petition for post-conviction relief on the same date.  *Id.* at Ex. 38.  The trial court denied both. *Id.* at Ex. 39.  The Twelfth District affirmed.  *State v. Brown,* 2020-Ohio-971 (12th Dist, Mar. 16, 2020), appellate jurisdiction declined, 159 Ohio St. 3d 1465 (2020).

Brown's Petition for writ of habeas corpus pleads the following grounds for relief:

> **Ground One**: Ineffective Assistance of counsel at trial and prior to trial.

**Supporting Facts:**

[a][1] Counsel failed to illicit [sic] testimony from Vosler about poisoning and counsel failed to interview Vosler.

[b] Counsel failed to illicit [sic] testimony from Day about the alarmed and videoed property and counsel failed to interview Day.

[c] Counsel failed to investigate all of the alleged victim's mental health issues, represented to his client they could not talk about or bring in her mental health issues.

[d] Counsel failed to recognize no time brackets on the Bill of Particulars.

[e] Counsel failed to recognize there was no charge or time brackets on the Bill of Particulars, that the defendant was tried and convicted for.

[f] Counsel failed to put forth evidence that the alleged victim was not the age reflected on the indictment this also shows actual innocence.

[g] Counsel allowed a false report to be used that compromised a legal proceeding allowing inadmissible evidence to destroy the defendants defense this also allows for actual innocence.

[h] Counsel failed to inform defendant of a plea agreement.

**Ground Two**: Defendant received ineffective assistance of appellate counsel.

**Supporting Facts:**

[a] Appellate Counsel allowed petitioner to be tried for offenses that could not have occurred, and this shows actual innocence of the charges against the defendant.

[b] Appellate Counsel failed to recognize a confrontation clause and examination issue.

[c] Appellate Counsel failed to recognize the expert witness was not qualified as such.

---

[1] The paragraphs of Petitioner's "Supporting Facts" on their face state separate sub-claims for relief. The Magistrate Judge has added the bracketed letters for ease of reference in later portions of this Report.

[d] Appellate Counsel failed to advance as error the fact trial counsel did not see that the Bill of Particulars was without a charge and the time brackets that the petitioner was tried and convicted for.

**Ground Three**: Petitioner was denied his compulsory Process rights, fair trial and Due Process.

**Supporting Facts:**

[a] A witness and investigating officer in the instant case delivered subpoenas in the same case he was investigating, he told the defense witness the petitioner had committed the same crime he was charged with in this trial. This was not true and violated the petitioner's Compulsory Process rights and the right to Due Process and fair trial.

[b] The investigating officer presented a false report and false affidavit.

[c] The Prosecutor presented two false reports and the false affidavit of the investigator to the court.

**Ground Four**: Petitioner's right to Due Process under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution was violated because of prosecutorial misconduct and the trial courts misapplication of law.

**Supporting Facts:**

[a] The trial court misapplied the law and neglected to give the petitioner an evidentiary hearing.

[b] The trial court allowed false 404B evidence to determine evidentiary issues.

[c] The States Attorney failed to produce a charge and time brackets in the Bill of Particulars that the petitioner was convicted of.

[d] The State interfered with the petitioner's defense.

[e] The State failed to disclose a CSD report and other reports

[f] Two witnesses and investigators for the prosecution made an assessment on a material fact of Petitioners case.

4

[g] The State misrepresented issues concerning Barium poisoning.

[h] False reports and a false affidavit were presented to the court by prosecution and law enforcement.

[i] Court did not review the case before ruling.

(Petition, ECF No. 3, PageID 10, 11, 13, 14).

# Analysis

**Procedural Default**

Respondent asserts that all of Brown's claims, with the exception of one raised in his first post-conviction petition, are barred by his procedural defaults in presenting those claims to the Ohio courts (Return, ECF No. 24, PageID 1570-97).

Petitioner responds to the procedural default defense by asserting that a procedural default can be excused when it is caused by ineffective assistance of counsel (Reply, ECF No. 38-1, PageID 1793, citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). He also argues that lack of exhaustion of available state court remedies is not a jurisdictional bar and a district court may therefore decide unexhausted claims. *Id.*, citing *Padavich v. Thalacker*, 162 F. 3d 521 (8th Cir. 1998). Brown claims his postconviction attorney is at fault for not filing the direct appeal to the Ohio Supreme Court. *Id.*

Brown provides a lengthy discussion of how his various retained counsel did not do what they were paid to do (Reply, ECF No. 38-1, PageID 1794-1802). The only evidentiary reference in that portion of the Reply to any difficulties with attorneys is the Affidavit of Dorothy Retherford, Petitioner's mother, which discusses her difficulties obtaining her son's file from attorney Jim Thomas in July 2018 (State Court Record, ECF No. 23, PageID 554-55). Nothing evidentiary was submitted to the Ohio courts about alleged deficiencies in performance of any other attorneys in

the case.  Brown concludes this portion of his Reply by asserting that he was "let down by all of his attorneys and should not have to pay for their ineffectiveness." (Reply, ECF No. 38-1, PageID 1802).

In his Reply, Brown cites authority for the proposition that lack of exhaustion is not a jurisdictional bar to habeas relief.  That is correct.   The exhaustion doctrine is not jurisdictional and is thus waivable by the State.  *Ex parte Royall*, 117 U.S. 241 (1886); *Granberry v. Greer*, 481 U.S. 129 (1987).  However, the State of Ohio does not assert that Brown's claims are unexhausted, which would mean that there still existed some available state court remedy.  Instead, the State asserts procedural default, which amounts to saying there was a possible remedy and Brown failed properly to invoke it.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*,

456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were
> procedurally defaulted in state court—that is, claims that the state
> court denied based on an adequate and independent state procedural
> rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175
> L.Ed.2d 417 (2009). This is an important "corollary" to the
> exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124
> S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which
> a state prisoner fails to exhaust state remedies, a habeas petitioner
> who has failed to meet the State's procedural requirements for
> presenting his federal claims has deprived the state courts of an
> opportunity to address" the merits of "those claims in the first
> instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111
> S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default
> doctrine thus advances the same comity, finality, and federalism
> interests advanced by the exhaustion doctrine. See *McCleskey v.
> Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims

that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020),

citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786

F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*);

*Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th

Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261

F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
>                    . . . .
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster*

> *County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).   A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Brown also correctly asserts that procedural default can be excused when it is caused by ineffective assistance of counsel.  Counsel's constitutionally deficient performance in state court can serve as grounds for excusing a petitioner's procedural default. *Kelly v. Lazaroff,* 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).

However, ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment.  *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).  The right to appointed counsel extends to the first appeal of right and no further.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974).  In particular, there is no constitutional guarantee of the effective assistance of counsel in post-conviction petitions or on

direct appeal to a state supreme court when that review is discretionary, as it is in Ohio, and thus ineffective assistance of counsel in those proceeding will not excuse a procedural default in those proceedings.

Brown relies on *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), for the proposition that there is a constitutional right to effective assistance of counsel in post-conviction proceedings. That is an incorrect reading of those cases. Taken together, they hold that if a State requires ineffective assistance of trial counsel claims to be litigated in a post-conviction collateral proceeding, then if the State denies counsel in those proceedings or the post-conviction counsel's performance is ineffective to the level prescribed in *Strickland v. Washington*, 466 U.S. 668 (1984), that ineffectiveness will excuse procedural default of a substantial ineffective assistance of trial counsel claim. The Supreme Court did not extend the Sixth Amendment right to counsel to post-conviction proceedings.

Ohio has a bifurcated procedure for litigating ineffective assistance of trial counsel claims. If they are capable of resolution on the appellate record, they must be raised on direct appeal. If they are not raised in that way, they are barred by *res judicata* from being raised in post-conviction proceedings. *State v. Perry,* 10 Ohio St. 2d 175 (1967)(emphasis sic.). See also *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Duling*, 21 Ohio St. 2d 13 (1970). If, on the other hand, they depend on evidence outside ("*dehors*") the appellate record, they can be raised in a post-conviction proceeding under Ohio Revised Code § 2953.21. Ohio does not appoint counsel as a matter of course in Ohio Revised Code § 2953.21 proceedings, so that if a retained attorney in post-conviction performs below the level demanded by *Strickland*, a habeas court may hear a substantial claim of ineffective assistance of trial counsel despite other procedural default. This is the *Martinez/Trevino* exception and it applies in Ohio. *White v. Warden, Ross Corr. Inst.,* 940 F.3d

9

270 (6th Cir. 2019).

One further hurdle for the habeas petitioner is that a claim of ineffective assistance of counsel, before it can be used to excuse a procedural default, must first be properly presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Brown was represented at trial by James Thomas and on appeal by Fred Miller and then by Christopher Pagan after Miller became a judge (ECF No. 23, PageID 259). Because Miller was new counsel, he was obliged to raise any claims of ineffective assistance of trial counsel which could be decided on the appellate record. Miller presented as Brown's Second Assignment of Error the following:

> Counsel is ineffective when he fails to object to crucial evidence, fails to present evidence that would directly impeach the complaining witness, and fails to question the complaining witness regardng [*sic*] previous false allegations similar to those in the current case.

(Appellant's Brief, State Court Record, ECF No. 23, PageID 261). The Twelfth District held these claims were properly considered on direct appeal and found them to be without merit. *Brown I* at ¶¶ 20-24.

Brown procedurally defaulted on these claims by not appealing to the Supreme Court of Ohio. The forty-five day time limit on appeal to Ohio Supreme Court prescribed by S. Ct. Prac. R. 7.01(A)(1)(a)(i) has been consistently held by the Sixth Circuit to be an adequate and independent state ground of decision. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004)(citations omitted). In general "denying a postconviction motion or appeal based on untimeliness is an independent and adequate state procedural ground." *Walker v. Martin,* 562 U.S. 307, 310-11 (2011); *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).

Brown attempts to excuse this default by asserting that Attorney Pagan was instructed to file a direct appeal to the Supreme Court of Ohio (Reply, ECF No. 38-1, PageID 1794). This claim is supported only by Brown's unsworn hearsay statements in the Reply. Even if these statements were embodied in an affidavit, the Court could not consider them because they were not presented to the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Furthermore this excuse for the failure to appeal procedural default is itself defaulted because Brown was extremely untimely in filing his 26(B) Application and this was held against him by the Twelfth District when it dismissed the Application as untimely. (Entry Denying Reopening, *State v. Brown*, Case No. CA2016-07-006, (12th Dist. Sept. 19, 2019)(unreported; copy at State Court Record, ECF No. 23, Ex. 32)). Under Ohio law, a claim of ineffective assistance of appellate counsel can only be heard in a proceeding for reopening under App. R. 26(B). *State v. Murnahan*, 63 Ohio St. 3d 60 (1992). "In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell,* 693 F.3d 555, 564 (6th Cir. 2012).

Under Ohio App. R. 26(B), an application for reopening must be filed within ninety days of journalization of the decision allegedly affected by the ineffective assistance of appellate counsel. *Brown III* at PageID 498. Brown's 26(B) Application was "more than 21 months late." *Id.* The Twelfth District enforced this state procedural rule against Brown by dismissing his 26(B) Application without reaching the merits. *Id.* at PageID 500.

The timeliness rule for filing a 26(B) application has been repeatedly held by the Sixth Circuit to be an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in

capital cases); *Monzo v. Edwards*,  281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

In sum, Brown's failure to take a timely direct appeal to the Supreme Court of Ohio bars merit review in habeas corpus of any claims actually raised on direct appeal to the Twelfth District. Respondent also asserts that most of the claims Brown has raised in state court collateral attacks are also barred by procedural default in that they should have been raised on direct appeal but were not and are now barred by the Ohio criminal *res judicata* doctrine.

Attorney Pagan filed Brown's first post-conviction petition on August 22, 2017 (State Court Record, ECF No. 23, Ex. 19).  In the Petition Brown alleges ineffective assistance of trial counsel in (1) failing to present evidence from Dan Day which would have impeached the victim's testimony that Brown had abused her on Day's property and (2) failing to present evidence from Dr. Scott Vosler that he had treated Brown for barium poisoning, supposedly perpetrated by the victim's mother and Brown's wife, which would allegedly have shown the victim's motive to give false testimony. *Id.* at PageID 334-35.

The trial court denied this post-conviction petition on September 6, 2017, on the basis of *res judicata*, and likewise denied his request for an evidentiary hearing. (Decision and Entry on Post-Conviction, State Court Record, ECF No. 23, Exhibit 21).  Still represented by Attorney Pagan, Brown appealed to the Twelfth District. *Id.* at Ex. 23.  The Twelfth District affirmed the denial of relief.  *State v. Brown,* 2018-Ohio-3338 (12th Dist. Aug. 20, 2018), appellate jurisdiction declined, 154 Ohio St. 3d 1464 (2018).

Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,*

17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899,

913 (S.D. Ohio 2001).  The Ohio courts have consistently enforced the rule.   *State v. Cole*, 2 Ohio

St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).

With respect to those claims Brown raised in his *pro se* second motion for new trial, he

notes that the trial court held he was not unavoidably prevented from raising those claims within

the time allowed for a new trial motion as a matter of course, as opposed to in a motion for leave

to file a delayed new trial motion and the Twelfth District affirmed on the same basis (Reply, ECF

No. 38-1, PageID 1804).  He also notes that the Ohio standard for deciding and review of such

delayed new trial motions commits that decision to the sound discretion of the trial.

Brown argues that rules granting discretion to state courts to accept or not accept a filing

do not constitute adequate and independent state grounds of decision (Reply, ECF No. 38-1,

PageID 1805, citing *inter alia*, *Deitz v. Money*, 391 F.3d 804 (6th Cir. 2004)).

However, *Deitz* is no longer good law.  In *Beard v. Kindler*, 558 U.S. 53, 54 (2009), the

Supreme Court held "a discretionary rule can serve as an adequate ground to bar federal habeas

review." In *Walker v. Martin*, 562 U.S. 307 (2011), it held unanimously that a California rule that

requires state habeas to be filed "as promptly as the circumstances allow" and without "substantial

delay," confers discretion but does not mean the rule is not firmly established and regularly

followed.

> [A] discretionary rule can be "firmly established" and "regularly
> followed"--even if the appropriate exercise of discretion may permit
> consideration of a federal claim in some cases but not others. See
> Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev.
> 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form
> an important independent category under the inadequate state
> ground doctrine").
>
> A contrary holding would pose an unnecessary dilemma for the

13

> States: States could preserve flexibility by granting courts discretion
> to excuse procedural errors, but only at the cost of undermining the
> finality of state court judgments. Or States could preserve the
> finality of their judgments by withholding such discretion, but only
> at the cost of precluding any flexibility in applying the rules.

*Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

> Recognizing the impact of these cases, the Sixth Circuit has now held:

> > *Beard* and *Walker*, when read together, permit a state procedural
> > rule to serve as an adequate state ground for preventing review of a
> > habeas petition even if the state rule accords courts broad discretion.
> > As a result of the Supreme Court's decision in *Walker, Deitz* is no
> > longer the controlling law on this issue in our Circuit, and a
> > petitioner's failure to follow Ohio Rule of Appellate Procedure 5(A)
> > can serve as the basis for a procedural default of a petitioner's
> > habeas claims.

 *Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011).

The Common Pleas Court's decision not to allow Brown to file a delayed motion for new

trial was based on its finding that he had not been unavoidably prevented from discovering the

relevant facts in time to file a motion for new trial within the time ordinarily allowed for such

motions under Ohio law. (Judgment Entry, State Court Record, ECF No. 23, Ex. 39, PageID 858).

The Twelfth District affirmed on this specific issue. (Opinion in *State v. Brown*, Case No.

CA2019-04-006 (12th Dist. Mar. 16, 2020)(unreported; copy at State Court Record, ECF No. 23,

Ex. 44, ¶¶ 15 et seq.).

This finding of fact by the state courts is entitled to deference in this Court under the

Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the

"AEDPA" unless it is "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding[s]"). 28 U.S.C. § 2254(d)(2). "[R]egardless of whether [a

federal court] would reach a different conclusion were [it] reviewing the case *de novo*, the findings

of the state court must be upheld unless there is clear and convincing evidence to the contrary."
*Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001).  Brown has not demonstrated by clear and
convincing evidence that the state court determination that he was not unavoidably prevented from
learning the relevant facts in a timely manner is an unreasonable determination of the facts based
on the state court evidence.  This Court must thus defer to that finding of fact.

The state procedural rule in question here is the rule requiring new trial motions to be
presented within 120 days of judgment unless the defendant has been unavoidably prevented from
discovering the relevant facts.  Ohio R. Crim. P. 33(B).  As a rule protecting the State's interest in
finality of criminal judgments it is adequate under federal law.  On its face it is also independent
of federal law.  The rule was enforced against Brown by both the Commons Pleas Court and the
Twelfth District.  Brown has not shown cause and prejudice to excuse this untimely failing and
the claims raised in his second motion for new trial are thus procedurally defaulted.

The same conclusion applies to his successive petition for post-conviction relief under
Ohio Revised Code § 2953.23.  Ohio places stringent limits on second or successive petitions for
post-conviction relief, similar to those imposed on second or successive habeas corpus petitions
by 28 U.S.C. § 2244(b).  Ohio enforces those limits by denying jurisdiction to its courts to hear
such petitions on the merits unless they meet those stringent conditions.  In this case the Common
Pleas Court concluded Brown did not meet those conditions and the Twelfth District agreed.
(Judgment Entry, State Court Record, ECF No. 23, Ex. 39, PageID 858).  The Twelfth District
affirmed on this specific issue. Opinion in *State v. Brown*, Case No.  CA2019-04-006 (12th Dist.
Mar. 16, 2020)(unreported; copy at State Court Record, ECF No. 23, Ex. 44, ¶¶ 15 et seq.).

In sum, based on the foregoing analysis, the Magistrate Judge agrees with Respondent that
all of Brown's claims, except one presented in his first post-conviction petition, are barred from

merits review by Brown's procedural defaults in presenting those claims to the Ohio courts.

**Merits**

Respondent concedes that the Twelfth District Court of Appeals reached the merits of Brown's claim that his trial attorney provided ineffective assistance of trial counsel when he failed to present the so-called Barium Poisoning Evidence (Return, ECF No. 24, PageID 1597, et seq.). This Court may therefore also reach the merits of this claim which is Ground for Relief 1[a], hereinafter referred to as the Barium Poisoning Sub-claim.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice*.  Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires

16

> that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

17

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

When a state court decides on the merits a federal constitutional claim such as ineffective assistance of trial counsel later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  Because the Ohio courts did decide the Barium Poisoning Sub-claim on the merits, Brown's burden in habeas is to show that the decision of the Twelfth District[2] on this issue is contrary to or an objectively unreasonable application of *Strickland* and its progeny.

In denying relief on this claim, the Twelfth District relied both on *res judicata* and on lack of merit:

> [*P23]  In consideration of the Barium Poisoning Evidence, the trial court likewise found res judicata applied because Brown and his counsel were aware of this evidence leading up to the trial and Brown was further aware that his counsel did not present said evidence at trial. Additionally, the trial court found this evidence "of little value" and further found that Brown's trial counsel's decision not to use the evidence was a "trial tactic" and did not "constitute [a] denial of [the] effective assistance of counsel."
>
> [*P24]  As the trial court found, the record indicates the details of the Barium Poisoning Evidence and that Brown's trial counsel was aware of said evidence. Specifically, the record reflects that Brown disclosed a lab report from Carlson Company in his September 1, 2015 supplemental response to the state's request for discovery. The Carlson lab report demonstrates that the company conducted hair

---

[2] We look to the Twelfth District's decision because it is the last reasoned state court decision on this issue.  Y*lst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

follicle testing of Brown's hair, which disclosed elevated levels of barium. In Brown's second supplemental discovery response, filed on October 26, 2015, he disclosed another lab report from Carlson. On January 12, 2016, the state provided supplemental discovery consisting of a Preble County Sheriff's Office statement signed by Vosler, which detailed the Barium Poisoning Evidence and a computerized voice stress analyzer exam report indicating no deception by B.H.'s mother in denying the poisoning.

[*P25]  Additionally, the trial transcript indicates that trial counsel did not present the Barium Poisoning Evidence. Similar to the situation with the Day Evidence, the record reflects the substance of the Barium Poisoning Evidence and that it was known by trial counsel, but not presented at trial. Thus, we find the trial court did not err in finding Brown's claim for ineffective assistance of counsel based upon counsel's failure to present the Barium Poisoning Evidence was barred by res judicata, as Brown could have raised the issue in his direct appeal.

[*P26]  We likewise find the trial court did not err in finding Brown failed to present substantive grounds for relief in alleging ineffective assistance of counsel for failure to present the Barium Poisoning Evidence. As stated above, the trial court found the Barium Poisoning Evidence had "little value" and trial counsel's decision not to present it was a trial tactic. Brown asserts this evidence had impeachment value, and therefore, his trial counsel's failure to present the evidence may have affected the outcome of the trial. However, there is nothing in the PCR petition, including Vosler's affidavit, which connects B.H.'s mother's alleged attempt to poison Brown with a motive for B.H. to lie about being sexually abused by Brown. There is no indication that B.H. was aware of any attempted poisoning or that her mother had encouraged her to fabricate allegations against Brown that would serve as a basis for impeaching B.H. Furthermore, the record reflects Brown's trial counsel conducted a vigorous and thorough cross-examination of B.H in an effort to impeach her credibility. Moreover, even assuming the rationale for not presenting the Barium Poisoning Evidence may have been debatable, as the trial court found, it was a matter of defense strategy and trial tactics, and therefore, does not constitute the ineffective assistance of counsel. *State v. Stewart,* 12th Dist. Butler No. CA2011-09-173, 2012-Ohio-4640, ¶ 14. Thus, we find the trial court's determinations regarding the Barium Poisoning Evidence were not unreasonable, arbitrary, or unconscionable.

*Brown II.*  In conducting its evaluation of the claim, the Twelfth District cited *Strickland* as

19

incorporated in Ohio case law. *Id.* at ¶ 19, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992).

Brown argues the Barium Poisoning Sub-claim in the Reply (ECF No. 38-2, PageID 1810, et seq.). He first argues that, under Ohio law, the Twelfth District was incorrect to dismiss this sub-claim as a matter of *res judicata*. *Id.* at PageID 1810-12. Because Respondent has conceded that the Court can reach the merits of this claim, we need not consider whether the Twelfth District erred as a matter of Ohio law.

Brown then explains how he tried to get the barium poisoning evidence into the record and that his own attorney, Mr. Thomas, and the trial judge stopped him. *Id.* at PageID 1812-14. He concludes: "Based upon this evidence the Petitioner has shown that trial counsel was supposed to use the poisoning evidence. Petitioner did not know that trial counsel was not going to use it. This is shown in the testimony of Petitioner." *Id.* at PageID 1814-15.

Ineffective assistance of counsel is not shown by proving that an attorney did not do something his defendant-client expected him to do or even ordered him to do. Brown would have been able to show by the expert report that he did indeed have elevated levels of barium in his hair follicles. However, he has not shown how he would have proved that "Nicole and Britney planned this." *Id.* at PageID 1815. However much faith Brown has in his conspiracy theory about the barium poisoning, he did not present the state courts with evidence, as opposed to speculation, to tie the expert report to any conduct of Nicole, much less to prove that Nicole had involved the victim in this conspiracy. Under those circumstances, the explicit basis of the Twelfth District's merits decision, there is no basis to find Attorney Thomas provided ineffective assistance of trial counsel in failing to present what barium poisoning evidence he did have.

In the course of arguing this sub-claim, Brown makes many statements of purported fact.

For example, he states "The World Health Organizations high value limit [for barium] is 1580 ug/kg [and] Petitioner's high value was almost five times the recommended high limit." (Reply, ECF No. 38-2, citing PageID 341 for proof). That page is part of the report on barium testing from the Carlson Company. It does not identify the high value limits as having come from the WHO. It shows a value from Brown's testing of July 23-28, 2015, of 2401 ug/kg which is not five time the high value limit. The report is attached to the Affidavit of Scott Vosler (PageID 340), Brown's treating physician, which contains his completely speculative conclusion about why Nicole wanted her husband dead: "At this time, Larry received social-security disability and the complaining witness' mother believed she would receive social security survivorship benefits if Larry died." *Id.* at ¶ 5 It is hardly surprising that when Dr. Vosler reported this to Attorney Thomas, Thomas responded that he thought it would "muddy the waters." *Id.* at ¶ 8.

The Twelfth District's rejection of this Barium Poisoning Sub-claim on the merits is not an unreasonable application of *Strickland* and is therefore entitled to deference by this Court.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should

not be permitted to proceed *in forma pauperis*.

June 16, 2021.

                                        s/ *Michael R. Merz*
                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

## NOTICE REGARDING RECORD CITATIONS

The attention of all parties is called to S. D. Ohio Civ. R. 7.2(b)(5) which provides:

> (5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

The Court's electronic filing system inserts in all filings hyperlinks to the place in the record which has been cited following this Rule. However, as with most computer systems, the CM/ECF program cannot read pinpoint citations which do not follow the Rule precisely. For example, the first pinpoint citation in ODRC's Reply reads "Plaintiff argues that he could not bring this action until "administrative remedies as (sic) are exhausted (sic)." (Doc. 80, PageId# 987)." The correct citation would have been Doc. No. 80, PageID 987." Because Defendant added the "#" symbol, the program failed to inset a hyperlink. Use of this software is mandated by the Judicial Conference of the United States and cannot be locally modified. **The parties are cautioned to comply precisely with S. D. Ohio Civ. R. 7.2(b)(5) in any further filings.**

22